UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LAUTH GROUP, INC., et al.,          )
          Plaintiffs,        )
                          )
    vs.                     )
                          )
GARY GRASSO,               )        1:07-cv-0972- SEB-TAB
          Defendant.      )
                          )
                          )

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

**I. Introduction**.

       Plaintiffs sued Defendant Gary Grasso, a Chicago-based attorney, for defamation per se

because of a press release published in the e-newsletter INside Edge.  The press release

comments on litigation pending in Hamilton County between Plaintiffs and certain clients of

Defendant.  Among other things, the press release comments on how a denial of partial summary

judgment issued by Hamilton Superior Court Judge Steven R. Nation has "exposed and

confirmed" Plaintiff's "deception," that Plaintiffs cannot be trusted, and that Plaintiffs have

denied the existence of a contract that Judge Nation held existed.  [Docket No. 1 Ex. A, State

Court Complaint, ¶ 9; Docket No. 1, Ex. A, Press Release.]  The only contact information given

with the press release was for Defendant.  In their complaint, Plaintiffs allege that Defendant

issued the press release in which he "made several false, misleading, and defamatory

statements," and that these statements "constitute a gross mischaracterization" of the order

issued by Judge Nation and "are defamatory toward the Plaintiffs."   [Docket No. 1, Ex. A, State

Court Complaint ¶ 8-10.]  Defendant denies these allegations.  [Docket No. 10 at ¶ 4 .]

       Given Defendant's denials, Plaintiffs served interrogatories on Defendant containing

seven questions drafted to gain information on who, then, did write and disseminate the press

release if not Defendant.  Defendant provided a general objection "to the disclosure of any

information protected by the attorney client privilege," but he did not provide specific objections

to the interrogatories that he failed to fully answer.  [Docket No. 27, Ex. A.]  After compliance

with S.D.Ind.L.R. 37.1, Plaintiffs filed this motion to compel Defendant to fully answer these

interrogatories.  [Docket Nos. 20, 21.]

**II.  Discussion**.

The particular interrogatories at issue are Interrogatory Nos. 1, 2, 4, and 5.  Interrogatory

No. 1 requests the names, titles, and contact information for anyone involved in drafting or

editing the press release.  Defendant responded: "Although he may have played a role in editing

of the press release, the defendant only has a recollection of editing the last paragraph."  [Docket

No. 27, Ex. A, ¶ 1.]  Interrogatory No. 2 asks Defendant to explain the making of the press

release, including how, when, where, with what equipment, why, and to whom it was

disseminated.  Defendant responded: "The defendant's editing of the press release was provided

using the lap top in his office in the day or so before its release.  He did not disseminate the

document to INside Edge."  [*Id*. at ¶ 2.]  Interrogatory No. 4 asks how INside Edge came into

possession of the press release, including the manner of transmission, who participated in

delivering it, and whether Defendant authorized the delivery if he did not himself deliver it.

Defendant's response to these questions in full is: "The defendant did not disseminate the press

release to Inside Edge."  [*Id*. at ¶ 4.]  Interrogatory No. 5 asks whether Defendant was

misquoted, and if so, to identify the portions of the press release misquoted, to identify who he

contends misquoted him, and whether he reviewed the press release and approved of the

quotations in it.  Defendant's response: "The quotes in Exhibit B do not appear to be incorrect." [*Id*. at ¶ 5.]

Defendant contends that he is bound by the Indiana and Illinois Rules of Professional Conduct, which would prohibit more detailed interrogatory responses.  Indiana Rule of Professional Conduct 1.6(a) provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)."  Similarly, Illinois Rule of Professional Conduct 1.6(a) provides: "Except when required under Rule 1.6(b) or permitted under Rule 1.6(c), a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after disclosure."

Both rules have exceptions.  One exception allows an attorney to reveal such confidential information in order to defend against an accusation of wrong doing.  Indiana Rule of Professional Conduct 1.6(b)(5) states: "A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a defense to a . . . civil claim against the lawyer based upon conduct in which the client was involved . . . ."  Likewise, Illinois Rule of Professional Conduct 1.6(c)(3) states: "A lawyer may use or reveal . . . confidences or secrets necessary . . . to defend the lawyer . . . against an accusation of wrongful conduct."

The exceptions from both rules apply to the situation at hand.  Defendant is both accused of "wrongful conduct" and is defending a "civil claim against the lawyer based upon conduct in which the client was involved."  (The fact that Defendant cannot reveal communications by a

client necessarily means a client is involved in some way.)  Thus, in this particular instance, for Defendant's own defense, revealing information he has regarding a client that he believes is in some way involved in creating and/or disseminating this press release with his name on it would not violate the Indiana or Illinois Rules of Professional Conduct.

Defendant also argues that disclosure of his client is not permitted based on the attorney-client privilege—a privilege belonging to the client that Defendant cannot waive.  *See Brown v. Katz*, 868 N.E.2d 1159, 1166 (Ind. Ct. App. 2007).  This cause of action being based on state law, Indiana law provides the basis for the attorney-client privilege.  Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); *United States v. BDO Seidman*, 492 F.3d 806, 814 (7th Cir. 2007).

Indiana Code § 34-46-3-1 states, in pertinent part: "[T]he following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases."  In order to invoke the attorney-client privilege, the following two elements must be established: "(i) the existence of an attorney-client relationship and (ii) that a confidential communication was involved."  *Mayberry v. State of Indiana*, 670 N.E.2d 1262, 1266 (Ind. 1996).  "The attorney-client privilege should be narrowly construed because the privilege may prevent the disclosure of relevant information."  *Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004).  Likewise, the person asserting the privilege has the burden of establishing its applicability.  *Id*.

Primarily at issue in this discovery dispute is whether disclosure by the attorney of his client's identity is protected by the attorney-client privilege.  A client's identity is normally not considered privileged communication.  *Corll v. Edward D. Jones & Co.*, 646 N.E.2d 721, 725 (Ind. App. 1995).  However, an exception to this general rule is "where so much has been divulged with regard to the legal services rendered or the advice sought that to reveal the client's name would be to disclose the whole relationship and confidential communications."  *Colman v. Heidenreich*, 269 Ind. 419, 427, 381 N.E.2d 866, 871 (1978).  Whether a client's identity is privileged is dependant on the facts of each case.  *Id.*  In *Colman v. Heidenreich*, 381 N.E.2d 866, 871 (Ind. 1978), the court held that, where an attorney had disclosed to authorities incriminating information about his client's secret girlfriend, the attorney was required to disclose the name of the girlfriend but not of the client because disclosing both would reveal the client's secret that he was associated with this girlfriend.  Likewise, the Indiana Court of Appeals has noted that "[i]dentity or fee arrangements may be privileged where revealing the third party's identity or the fee arrangement would be tantamount to the disclosure of a confidential communication."  *Hueck v. State*, 590 N.E.2d 581, 585 (Ind. Ct. App. 1992); *see also Chamberlin v. Missouri Elections Commission*, 540 S.W.2d 876, 880 (Mo. 1976); *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960).

On the other hand, given that the attorney-client privilege is to be narrowly construed, it is not clear that any communication between Defendant and his anonymous client on the particular matter of the press release is protected by the attorney-client privilege.  Arguably at least some of the communications occurring between Defendant and his client on this matter are not privileged because the press release was intentionally made public, and communications

5

which are intended to be public are not privileged.  *See Corll*, 646 N.E.2d at 725 (citing *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).   Furthermore, the relevant statute says that the privilege applies to confidential communications and advice given to clients in the course of an attorney's professional business.  The scope of an attorney's professional business is communication for the purpose of *legal* advice or aid.  *See Gast v. Hall*, 858 N.E.2d 154, 164 (Ind. Ct. App. 2006) ("The attorney-client privilege 'applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities.'") (quoting *Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 515 (Ind. Ct. App. 1999)); Federal Rules of Evidence Manual 501.02 [5][b] ("A client may not 'buy' a privilege by retaining an attorney to do something that a non-lawyer could do just as well. The client must be seeking legal advice and assistance from the lawyer.  Accordingly, Courts have found that communications are not privileged when the lawyer is retained to do tasks that nonlawyers can also do.") (footnotes omitted).

While Indiana seems to have not yet addressed whether public relations work by an attorney is considered legal advice, other jurisdictions have broached the subject.  For example, in *Reino de Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573 LTSRLE, 2005 WL 3455782, (S.D.N.Y. Dec. 14, 2005), the Southern District of New York conducted an *in camera* inspection of attorney notes that had been inadvertently handed over to opposing counsel and determined that the notes were not protected by the attorney-client privilege because "the notes contain discussions of non-legal issues, including business, press and public relations strategies." Likewise, the District of Massachusetts determined that particular documents prepared by the defendants' attorneys "in anticipation of media inquiries" were not protected by the attorney-

client privilege.  *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000).  The

Northern District of California determined that documents identified on a privilege log as to

"notations made by defendants' in-house counsel" on "drafts of press releases [the defendant]

intended to release to the public" were not—based on that description—privileged.  *In re Adobe*

*Systems, Inc. Secs. Litigation*, Master File No. C-90-2453 SBA (FSL), 1991 U.S. Dist. LEXIS

15929, *8 (N.D. Cal. Oct. 23, 1991).  But the court also determined that drafts of press releases

containing hand-written attorney notions regarding legal questions were privileged.  *Id*. at *10-

12; *see also Macario v. Pratt*,  Civ. A. No. 90-3906, 1991 WL 6117 (E.D. Penn. Jan. 17, 1991)

(determining that a draft of a press release that was contingent on an attorney's approval prior to

release and a fax containing legal advice regarding the draft were both protected by the attorney-

client privilege).

   By concealing his client's identity, Defendant seeks to protect at least two layers of

information: (1) whether he had a communication about the press release with his client (which

could be revealed by answering Interrogatory No. 1); and (2) the specific content in that

conversation.  Defendant has failed to establish that the attorney-client privilege pertains to

either.  Indiana case law indicates that a client's identity is normally not privileged, with an

exception where so much information has been divulged that to disclose the identity of the client

would disclose confidential communications.  The burden is on Defendant to establish attorney-

client privilege applies based on this exception.  Defendant has not done so, particularly since

the information divulged thus far was done so publically in the form of a press release, the

dissemination of which Defendant's client is presumably in some way involved.  The attorney-

client privilege was not intended to be used as a cloak in this way.  Thus, the identities of anyone

involved in drafting or editing the press release is not protected by attorney-client privilege and Defendant must supplement his answer to Interrogatory No. 1.

Defendant must also supplement his responses to Interrogatory Nos. 2 and 4.  Defendant has set forth very little information regarding the nature of any communications between him and his anonymous client or clients.  Defendant's interrogatory responses might even be described as evasive.  Defendant's answers to the interrogatories merely reveal that Defendant edited the last paragraph of the press release on his laptop the day or so before its release.  Without more information, it appears as though Defendant was being consulted as an editor or public relations consultant, not an attorney.  Defendant has thus failed to demonstrate that the attorney-client privilege applies to the conversations he had with his client(s) on the matter of the press release, having failed to show the nature of the communications pertained to legal advice.  Therefore, Defendant must supplement his answers to Interrogatory Nos. 2 and 4.  Nevertheless, the Court finds that Defendant may object to the portion of Interrogatory No. 2 asking "why" the press release was disseminated but must do so in conformity with Federal Rules of Civil Procedure 26(b)(5)(A) and 33(b)(4).  Exploring "why" a press release might be disseminated is such a broad inquiry that it potentially opens the door to legal communications that are protected.

As to Interrogatory No. 5, the Court finds that Defendant has already answered it.  As written, Interrogatory No. 5 only requests the information Plaintiffs say is missing from Defendant's answer if Defendant contends he was misquoted.  Defendant's answer—"The quotes in Exhibit B do not appear to be incorrect."—indicates that Defendant does not contend that he was misquoted.  Thus, this answer is complete.

8

**III.  Conclusion.**

Accordingly, Plaintiffs' motion to compel [Docket No. 20] is granted in part and denied in part.  Defendant shall supplement answers to Interrogatory Nos. 1, 2, and 4 within 10 days of the date of this order.  As to Interrogatory No. 5, Defendant has already fully answered it, so Plaintiffs' motion to compel a more detailed response to this interrogatory is denied.

Dated:   04/04/2008

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

9

Copies to:

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com

Alan S. Townsend
BOSE MCKINNEY & EVANS, LLP
atownsend@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP
pvink@boselaw.com